In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00203-CR

                                                ______________________________

 

 

                                           ANDRE DAVIS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 38,249-B

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Andre
Davis was convicted by a jury of possession of more than four but less than 200
grams of cocaine.  He pled true to a
prior conviction used to enhance punishment and was assessed punishment of
twenty years’ imprisonment.  His appeal
raises issues of (1) corroboration of an accomplice witness’ testimony, (2) the
trial court’s failure to grant his motion for continuance, and (3) appearance
of the accomplice witness in civilian clothes. 
We affirm the judgment of the trial court.

I.          Facts

            Thirty-six-year-old
Davis was a passenger in a green Oldsmobile driven by his nineteen-year-old
girlfriend, Jordin Garrett.  Garrett was
known by officers from the age of sixteen as a drug addict and prostitute, with
a current warrant out for her arrest. 
Undercover officer Lanie Smith, Jr., was conducting surveillance at a
nearby hotel when Garrett and Davis pulled into the parking lot, exited the
vehicle, and conversed with an unknown male. 
Smith observed the trio enter the vehicle together.  After a few minutes, the unknown male left,
and Garrett drove off.  Smith knew a
warrant for Garrett’s arrest existed and notified her supervisor of her
observations.  

            Sergeant
Seth Vanover was in the area when he was warned to be on the lookout for a
green Oldsmobile carrying Garrett and Davis. 
He spotted the vehicle and began to follow it in his patrol car.  Vanover noted that, “[a]s soon as I light the
suspect vehicle up, right before we pull into the hotel, I see two pill bottles
come out the passenger window.”  Vanover
radioed “he threw something out” to the other marked and undercover police
vehicles following behind.  While Vanover
gave chase, Officer Gene Duffie, Jr., saw that “there was some narcotics thrown
out of a window” and “stopped and picked those up.”  The pill bottles were on the right of the
road, with one falling in the “grassy area.” 
None of the officers could confirm whether Garrett or Davis threw the
pill bottles.[1]  

            Garrett
was placed in handcuffs as soon as she was pulled over.  Prior to her pat-down search, she admitted
that she had a plastic bag filled with marihuana in her underwear, but denied
possession of the pill bottles.  Davis
was arrested when Duffie returned to the scene with the cocaine.  Garrett and Davis were placed in the back of
a patrol car together.  The following
exchange occurred.  

Davis:  The
man say he seen it get throwed out my window . . . . I told him he didn’t see
me throw shit.  He said it came out my
window so I’m going to be charged.  

 

Garrett:  It’s
not that way, you told me.

 

Davis:  We
bein’ recorded or whatever so I’m just telling you the man say that he seen it come
out my window.  I said I didn’t throw
nothing out the window.  

 

The pair was transported to jail.


            In
a prior lifetime, Davis played college football with Texas Christian University
for four years, earned the All-American title two times, and was drafted by a
professional team.  His dreams of fame
and fortune came to an unfortunate end when federal drug charges prematurely
ended his promising career.  Davis knew
he would be facing a long-term jail sentence if convicted.  A series of jailhouse love letters emerged
demonstrating Davis’ attempts to entice Garrett to plead guilty to possession
of the cocaine with promises of marriage. 
The two developed a plan in which Garrett would sign an affidavit
alleging Davis’ innocence.  Davis wrote:


 “Just do the right
 thing . . . Boo imagine if everything works out. . . .What do you think?
 . . . My time is 15-99 imagine that?”  
 “I was thinkin [sic] if
 you say they are going to give you probation it should not be a problem
 telling them the truth * as far as the drugs being yours and not
 mine.  It can only vindicate me and
 it want [sic] hurt you!!  That’s not
 a bad thing is it?  That’s the way
 you wanted things to turn out anyway huh Boo?  I think that’s how things should have
 turned out for both of us?  You get
 probation and I get released aint [sic] that what you want?  I’m telling you you hold the cards and
 times getting close that’s why I asked you about the paper work you was
 suppose to have notarized well the letter.”  
 “You must tell the
 People that the d_ _ _’s was yours and that I did not know about it until
 you throwed [sic] it out the window. 
 And that’s what your affidavit should say.  That’s pretty much it.  Are we on the same page?”  
 “If you take the
 case, and make bond & I get out we can make a babby [sic] huh?”  
 “What do you think
 about our plan have you started making any preparations as far as the
 affidavit Boo?”  
 “I think you have to
 write out what occurred that day & the drugs were not my [sic] &
 get it notarized Boo!!” 


 

            When
Davis did not get affirmation that Garrett was going along with the plan, he
began to plead:


 “Boo, I’m not scared
 of doing time I just know the smartest way out [of] this I’m sure you
 would not want me to be locked up 15 or 20 years would you.  When you damn near know you could do 1 yr
 and we all good.  Does that make
 sense do that sound reasonable, you might get probation Boo and you know
 it.”  
 “Can I ask you
 something?  Do you feel like you’re
 under some pressure to do the right thing by me or do you feel that’s just
 what suppose to happen?  I mean
 would you do it any way because you’ve flip flopped here lately and I’m
 trying to understand things a little better because you told me what you
 would do but you have yet to do it.” 
 
 “I am disappointed in
 a sense but you said some things a while back that stuck with me about you
 being young and I should take the charge and how you’ve flip flopped.”  
 “I was just thinking
 about how you’ve become so unpredictable. 
 At times I tend to think you allow others to sway your decisions,
 considering how you want to take the charge one day & then you don’t
 want to another day.  My honey I
 truly understand how difficult and insecure you can be at times, because
 you actually have to truly trust me as well as have faith in our
 relationship. . . . And I know in my heart you love me & I know we
 talked about some of the sacrifices must be made at times to insure the
 family (you & I) stay intact!!”


 

            Pleading
quickly turned to panic:


 “So I would
 appreciate it if you don’t discuss our situation with no one.  Its [sic] clear I’m on the outside
 looking in and its [sic] also clear that you are not 100% sure that you
 are down for me.” 
 “I have a strong
 feeling you plan on selling me out & leaving me for dead!!” 


 

            In
the end, appearing in orange handcuffs, Garrett decided to testify against
Davis at his trial.  She provided the
jury with her background, including two convictions of theft, theft of a
firearm, criminal trespass, and credit card and debit card abuse.  Garrett explained that she committed crimes
ranging from “stealing or exchanging sex for money” to support her addiction to
crack cocaine and that she was currently in jail.  On the day she was pulled over by Vanover,
Garrett admitted she had smoked marihuana and was high.  She said, “I seen the police, I put my
blinker on and made a turn and then the window went down, and Mr. Davis threw
the pill bottles out of the passenger side of the vehicle.”  The bottles “either came out of his pocket or
sitting between his legs, I know it came from his area.”  Instead of throwing the marihuana out of the
window, Garrett hid her bag in her underwear and admitted to its
possession.  She explained that she had
been dating Davis for three months prior to the pair’s incarceration.  Although he had never discussed marriage
before they were arrested, Garrett proclaimed in open court that she would
still marry Davis.  Davis’ letters made
Garrett “feel two different ways:  That
he loved me, and then I had a question in my mind . . . [whether] he [was] just
feeding me along so I would take this charge for him.”  After deciding not to plead to possession of
the cocaine, she wrote to Davis, “I could have protected you if you hadn’t
thrown the stuff out the window.” 
Garrett reiterated for the jury that the cocaine, an amount worth $900.00
on the street, belonged to Davis.  

II.        Corroboration of
Accomplice Testimony[2]

            It
is uncontroverted that Garrett was an accomplice witness in this case.  “A conviction cannot be had upon the testimony
of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed.”  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005).  

            While
“mere presence alone of a defendant at the scene of a crime is insufficient to
corroborate accomplice testimony,” “[p]roof that the accused was at or near the
scene of the crime at or about the time of its commission, when coupled with
other suspicious circumstances, may tend to connect the accused to the crime so
as to furnish sufficient corroboration to support a conviction.”  Malone
v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting Brown v. State, 672 S.W.2d 487, 489
(Tex. Crim. App. 1984), and Golden v.
State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)).

            We
“eliminate the accomplice testimony from consideration and then examine the
remaining portions of the record to see if there is any evidence that tends to
connect the accused with the commission of the crime” when evaluating the
sufficiency of corroboration evidence under the accomplice witness rule.  Malone,
253 S.W.3d at 257 (quoting Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).  It is not required that corroborating evidence
directly link Davis to the commission of the offense or prove his guilt beyond
a reasonable doubt.  Id.; Trevino v. State,
991 S.W.2d 849, 851 (Tex. Crim. App. 1999); Cathey,
992 S.W.2d at 462; Utsey v. State,
921 S.W.2d 451, 453 (Tex. App.––Texarkana 1996, pet. ref’d).  The evidence must simply link Davis in some way
to the commission of the crime and show that “rational jurors could conclude
that this evidence sufficiently tended to connect [him] to the offense.”  Simmons
v. State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). 

            According
to Smith, Davis participated in a possible drug transaction in the hotel
parking lot prior to his arrest.  Vanover
testified he witnessed the pill bottles being thrown from the passenger side
window where Davis was seated.  Duffie
found the bottles on the right side of the road.  Davis’ own statements in letters written to
Garrett, where he acknowledges the length of his sentence if convicted and
pleads for her to take the charge in exchange for promises of marriage, could
have been taken by the fact-finding jury as acknowledgements of his guilt.  Again, it is not required that this evidence directly link Davis to the offense;
rather, a rational jury must be enabled to conclude that it tends to connect Davis to the
offense.  Because officer testimony and
Davis’ letters tend to connect him to possession of the cocaine, we find that
Garrett’s testimony was sufficiently corroborated.  Davis’ first point of error is overruled. 

III.       Davis
Failed to Preserve Error in Denial of His Oral Motion for Continuance

            Davis next complains that the “trial
court erred in denying [his] request for a postponement and overruling [his]
objection to untimely disclosed evidence.” 
On the day of jury selection, Davis’ attorney orally complained of the
State’s failure to provide him with a copy of Davis’ letters to Garrett, in
alleged violation of the trial court’s discovery orders.  The State responded that it “did attempt by
various methods to contact [Davis’ attorney to] make him aware of these letters
that came into their possession” the week before jury selection, including fax,
e-mail, and regular mail.  The trial
court “delay[ed] the actual beginning of this case” by one day in order to give
Davis’ attorney time to prepare for the use of the letters.  Prior to opening statements, Davis’ attorney
re-urged his motion for continuance although he “had an opportunity to review
all of [Davis’] letters.”  He now alleges
the trial court’s denial of his oral motion was error. 

            We
find that Davis failed to preserve his complaint that the trial court should
have granted a continuance.  A criminal
trial may only be continued upon a written and sworn motion upon sufficient
cause set forth therein.  Tex. Code Crim. Proc. Ann. arts. 29.03,
29.08 (Vernon 2006).  In rejecting the
notion that there is a due process exception to procedural default, the Texas
Court of Criminal Appeals recently made clear “if a party makes an unsworn oral
motion for a continuance and the trial judge denies it, the party forfeits the
right to complain about the judge’s ruling on appeal” because “numerous
constitutional rights, including those that implicate a defendant’s due process
rights, may be forfeited.”  Anderson v. State, 301 S.W.3d 276, 279–80
(Tex. Crim. App. 2009).  Here, there is
no written, sworn motion for continuance in the record.  Thus, Davis’ point of error is overruled for
lack of its preservation.  

IV.       Garrett Was Not Required
to Appear in Jail Clothing

            Finally,
Davis argues that the trial court erroneously allowed Garrett to appear and
testify in civilian clothing.  The only
authority cited is this Court’s previous opinion in which we found it was error
(albeit harmless) to require a witness appearing on behalf of the defendant to
appear in jail clothing, when no rationale for such a requirement was
shown.  Gordon v. State, 260 S.W.3d 205 (Tex. App.––Texarkana 2008, pet.
ref’d).  

            In
contrast to Gordon, here the argument is not that the witness should not have
appeared in jail clothes, but that it was error to allow the witness to appear
in civilian clothes.  Counsel  argued that allowing Garrett to appear in
civilian clothing would improperly boost her credibility.  While waiting on Garrett to appear, the trial
court remarked, “At this point, I’ve got a jury waiting and I’m going to take
her however I can get her, whether she’s in jail clothing or not.”  Garrett appeared in court dressed in civilian
clothing and orange handcuffs.  The court
stated, “Obviously, it’s going to be brought out the fact that she’s in jail,”
and denied the request that Garrett be made to change.  The trial judge was correct in that
observation as Garrett appeared wearing handcuffs and admitted that she was
incarcerated in the Gregg County Jail. 
Allowing Davis’ accomplice to appear before the jury in civilian clothes
did not compromise Davis’ right to a presumption of innocence.  The trial court did not err in denying Davis’
request.  See Kimble v. State, 537
S.W.2d 254, 255 (Tex. Crim. App. 1976) (no harm or prejudice to defendant when
his codefendant was required to appear in jail clothing).  The final point of error is overruled.  

V.        Conclusion 

            We affirm the
judgment of the trial court.   

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          July
13, 2010

Date Decided:             July
22, 2010

 

Do Not Publish











[1]One
bottle contained 2.92 grams of cocaine, and the other contained 5.87 grams of
the controlled substance.   





[2]The
accomplice witness rule is a statutorily imposed sufficiency review which is
not derived from the federal or state constitutional principles that define the
traditional legal and factual sufficiency standards.  Cathey
v. State, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999).  In this case, Davis did not argue that the
evidence was insufficient to support the jury’s verdict.  He only alleges that evidence corroborating
Garrett’s testimony is insufficient.