

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00203-CR

_____

ANDRE DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 38,249-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Andre Davis was convicted by a jury of possession of more than four but less than 200 grams of cocaine. He pled true to a prior conviction used to enhance punishment and was assessed punishment of twenty years' imprisonment. His appeal raises issues of (1) corroboration of an accomplice witness' testimony, (2) the trial court's failure to grant his motion for continuance, and (3) appearance of the accomplice witness in civilian clothes. We affirm the judgment of the trial court.

## I.    Facts

Thirty-six-year-old Davis was a passenger in a green Oldsmobile driven by his nineteen-year-old girlfriend, Jordin Garrett. Garrett was known by officers from the age of sixteen as a drug addict and prostitute, with a current warrant out for her arrest. Undercover officer Lanie Smith, Jr., was conducting surveillance at a nearby hotel when Garrett and Davis pulled into the parking lot, exited the vehicle, and conversed with an unknown male. Smith observed the trio enter the vehicle together. After a few minutes, the unknown male left, and Garrett drove off. Smith knew a warrant for Garrett's arrest existed and notified her supervisor of her observations.

Sergeant Seth Vanover was in the area when he was warned to be on the lookout for a green Oldsmobile carrying Garrett and Davis. He spotted the vehicle and began to follow it in his patrol car. Vanover noted that, "[a]s soon as I light the suspect vehicle up, right before we pull into the

hotel, I see two pill bottles come out the passenger window." Vanover radioed "he threw something out" to the other marked and undercover police vehicles following behind. While Vanover gave chase, Officer Gene Duffie, Jr., saw that "there was some narcotics thrown out of a window" and "stopped and picked those up." The pill bottles were on the right of the road, with one falling in the "grassy area." None of the officers could confirm whether Garrett or Davis threw the pill bottles.[1]

Garrett was placed in handcuffs as soon as she was pulled over. Prior to her pat-down search, she admitted that she had a plastic bag filled with marihuana in her underwear, but denied possession of the pill bottles. Davis was arrested when Duffie returned to the scene with the cocaine. Garrett and Davis were placed in the back of a patrol car together. The following exchange occurred.

> Davis: The man say he seen it get throwed out my window . . . . I told him he didn't see me throw shit. He said it came out my window so I'm going to be charged.

> Garrett: It's not that way, you told me.

> Davis: We bein' recorded or whatever so I'm just telling you the man say that he seen it come out my window. I said I didn't throw nothing out the window.

The pair was transported to jail.

In a prior lifetime, Davis played college football with Texas Christian University for four years, earned the All-American title two times, and was drafted by a professional team. His

---

[1] One bottle contained 2.92 grams of cocaine, and the other contained 5.87 grams of the controlled substance.

dreams of fame and fortune came to an unfortunate end when federal drug charges prematurely ended his promising career. Davis knew he would be facing a long-term jail sentence if convicted. A series of jailhouse love letters emerged demonstrating Davis' attempts to entice Garrett to plead guilty to possession of the cocaine with promises of marriage. The two developed a plan in which Garrett would sign an affidavit alleging Davis' innocence. Davis wrote:

- "Just do the right thing . . . Boo imagine if everything works out. . . .What do you think? . . . My time is 15-99 imagine that?"
- "I was thinkin [sic] if you say they are going to give you probation it should not be a problem telling them the truth * as far as the drugs being yours and not mine. It can only vindicate me and it want [sic] hurt you!! That's not a bad thing is it? That's the way you wanted things to turn out anyway huh Boo? I think that's how things should have turned out for both of us? You get probation and I get released aint [sic] that what you want? I'm telling you you hold the cards and times getting close that's why I asked you about the paper work you was suppose to have notarized well the letter."
- "You must tell the People that the d_ _ _'s was yours and that I did not know about it until you throwed [sic] it out the window. And that's what your affidavit should say. That's pretty much it. Are we on the same page?"
- "If you take the case, and make bond & I get out we can make a babby [sic] huh?"
- "What do you think about our plan have you started making any preparations as far as the affidavit Boo?"
- "I think you have to write out what occurred that day & the drugs were not my [sic] & get it notarized Boo!!"

When Davis did not get affirmation that Garrett was going along with the plan, he began to plead:

- "Boo, I'm not scared of doing time I just know the smartest way out [of] this I'm sure you would not want me to be locked up 15 or 20 years would you. When you damn near know you could do 1 yr and we all good. Does that make sense do that sound reasonable, you might get probation Boo and you know it."

4

- "Can I ask you something?  Do you feel like you're under some pressure to do the right thing by me or do you feel that's just what suppose to happen?  I mean would you do it any way because you've flip flopped here lately and I'm trying to understand things a little better because you told me what you would do but you have yet to do it."
- "I am disappointed in a sense but you said some things a while back that stuck with me about you being young and I should take the charge and how you've flip flopped."
- "I was just thinking about how you've become so unpredictable.  At times I tend to think you allow others to sway your decisions, considering how you want to take the charge one day & then you don't want to another day.  My honey I truly understand how difficult and insecure you can be at times, because you actually have to truly trust me as well as have faith in our relationship. . . . And I know in my heart you love me & I know we talked about some of the sacrifices must be made at times to insure the family (you & I) stay intact!!"

Pleading quickly turned to panic:

- "So I would appreciate it if you don't discuss our situation with no one.  Its [sic] clear I'm on the outside looking in and its [sic] also clear that you are not 100% sure that you are down for me."
- "I have a strong feeling you plan on selling me out & leaving me for dead!!"

In the end, appearing in orange handcuffs, Garrett decided to testify against Davis at his trial.  She provided the jury with her background, including two convictions of theft, theft of a firearm, criminal trespass, and credit card and debit card abuse.  Garrett explained that she committed crimes ranging from "stealing or exchanging sex for money" to support her addiction to crack cocaine and that she was currently in jail.  On the day she was pulled over by Vanover, Garrett admitted she had smoked marihuana and was high.  She said, "I seen the police, I put my blinker on and made a turn and then the window went down, and Mr. Davis threw the pill bottles out of the passenger side of the vehicle."  The bottles "either came out of his pocket or sitting between his legs, I know it came from his area."  Instead of throwing the marihuana out of the

5

window, Garrett hid her bag in her underwear and admitted to its possession. She explained that she had been dating Davis for three months prior to the pair's incarceration. Although he had never discussed marriage before they were arrested, Garrett proclaimed in open court that she would still marry Davis. Davis' letters made Garrett "feel two different ways: That he loved me, and then I had a question in my mind . . . [whether] he [was] just feeding me along so I would take this charge for him." After deciding not to plead to possession of the cocaine, she wrote to Davis, "I could have protected you if you hadn't thrown the stuff out the window." Garrett reiterated for the jury that the cocaine, an amount worth $900.00 on the street, belonged to Davis.

## II.      Corroboration of Accomplice Testimony[2]

It is uncontroverted that Garrett was an accomplice witness in this case. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

While "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony," "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a

---

[2]The accomplice witness rule is a statutorily imposed sufficiency review which is not derived from the federal or state constitutional principles that define the traditional legal and factual sufficiency standards. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). In this case, Davis did not argue that the evidence was insufficient to support the jury's verdict. He only alleges that evidence corroborating Garrett's testimony is insufficient.

conviction." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984), and *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)).

We "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime" when evaluating the sufficiency of corroboration evidence under the accomplice witness rule. *Malone*, 253 S.W.3d at 257 (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). It is not required that corroborating evidence directly link Davis to the commission of the offense or prove his guilt beyond a reasonable doubt. *Id.*; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Cathey*, 992 S.W.2d at 462; *Utsey v. State*, 921 S.W.2d 451, 453 (Tex. App.—Texarkana 1996, pet. ref'd). The evidence must simply link Davis in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [him] to the offense." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

According to Smith, Davis participated in a possible drug transaction in the hotel parking lot prior to his arrest. Vanover testified he witnessed the pill bottles being thrown from the passenger side window where Davis was seated. Duffie found the bottles on the right side of the road. Davis' own statements in letters written to Garrett, where he acknowledges the length of his sentence if convicted and pleads for her to take the charge in exchange for promises of marriage,

7

could have been taken by the fact-finding jury as acknowledgements of his guilt. Again, it is not required that this evidence *directly link* Davis to the offense; rather, a rational jury must be enabled to conclude that it *tends to connect* Davis to the offense. Because officer testimony and Davis' letters tend to connect him to possession of the cocaine, we find that Garrett's testimony was sufficiently corroborated. Davis' first point of error is overruled.

## III.  Davis Failed to Preserve Error in Denial of His Oral Motion for Continuance

Davis next complains that the "trial court erred in denying [his] request for a postponement and overruling [his] objection to untimely disclosed evidence." On the day of jury selection, Davis' attorney orally complained of the State's failure to provide him with a copy of Davis' letters to Garrett, in alleged violation of the trial court's discovery orders. The State responded that it "did attempt by various methods to contact [Davis' attorney to] make him aware of these letters that came into their possession" the week before jury selection, including fax, e-mail, and regular mail. The trial court "delay[ed] the actual beginning of this case" by one day in order to give Davis' attorney time to prepare for the use of the letters. Prior to opening statements, Davis' attorney re-urged his motion for continuance although he "had an opportunity to review all of [Davis'] letters." He now alleges the trial court's denial of his oral motion was error.

We find that Davis failed to preserve his complaint that the trial court should have granted a continuance. A criminal trial may only be continued upon a written and sworn motion upon sufficient cause set forth therein. TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (Vernon 2006).

8

In rejecting the notion that there is a due process exception to procedural default, the Texas Court of Criminal Appeals recently made clear "if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal" because "numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited." *Anderson v. State*, 301 S.W.3d 276, 279–80 (Tex. Crim. App. 2009). Here, there is no written, sworn motion for continuance in the record. Thus, Davis' point of error is overruled for lack of its preservation.

## IV. Garrett Was Not Required to Appear in Jail Clothing

Finally, Davis argues that the trial court erroneously allowed Garrett to appear and testify in civilian clothing. The only authority cited is this Court's previous opinion in which we found it was error (albeit harmless) to require a witness appearing on behalf of the defendant to appear in jail clothing, when no rationale for such a requirement was shown. *Gordon v. State*, 260 S.W.3d 205 (Tex. App.—Texarkana 2008, pet. ref'd).

In contrast to Gordon, here the argument is not that the witness should not have appeared in jail clothes, but that it was error to allow the witness to appear in civilian clothes. Counsel argued that allowing Garrett to appear in civilian clothing would improperly boost her credibility. While waiting on Garrett to appear, the trial court remarked, "At this point, I've got a jury waiting and I'm going to take her however I can get her, whether she's in jail clothing or not." Garrett appeared in court dressed in civilian clothing and orange handcuffs. The court stated,

9

"Obviously, it's going to be brought out the fact that she's in jail," and denied the request that Garrett be made to change. The trial judge was correct in that observation as Garrett appeared wearing handcuffs and admitted that she was incarcerated in the Gregg County Jail. Allowing Davis' accomplice to appear before the jury in civilian clothes did not compromise Davis' right to a presumption of innocence. The trial court did not err in denying Davis' request. *See Kimble v. State*, 537 S.W.2d 254, 255 (Tex. Crim. App. 1976) (no harm or prejudice to defendant when his codefendant was required to appear in jail clothing). The final point of error is overruled.

## V.     Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:     July 13, 2010
Date Decided:       July 22, 2010

Do Not Publish

10