Stephen Dwight **THOMPSON**, Appellant,

v.

**The STATE of Texas, Appellee.**

**Nos. 48784 and 48785.**

Court of Criminal Appeals of Texas.

Oct. 9, 1974.

———◆———

Kerry P. FitzGerald, Dallas, (Court-appointed on appeal only), for appellant.

Henry Wade, Dist. Atty. and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

### PART I

These are appeals from convictions for two offenses tried at the same time. The robbery by assault conviction was upon a plea of not guilty. The jury assessed punishment at 500 years. The conviction for the offense of attempted escape by the use of a firearm was on a plea of guilty before the jury. Punishment was assessed at fifteen years. Appellant and four others, Bobby Joe Bridger,[1] Tommy Preston Marshburn, Christopher Lee Warren and William Howard Key, were charged as principals and were tried simultaneously on both charges.

Appellant attacks the sufficiency of the evidence in both cases. When he entered a plea of guilty before the jury after being duly admonished, he admitted all the facts alleged in the indictment charging him and four others with using a pistol in an attempt to escape confinement. See Brown v. State, Tex.Cr.App., 507 S.W.2d 235 (1974); Hunt v. State, Tex.Cr.App., 482 S.W.2d 217 (1972), and Maldonado v. State, Tex.Cr.App., 467 S.W.2d 468 (1971).

Where several people are acting together in pursuit of an unlawful act, each one is liable for collateral crimes, even though unplanned and unintended, committed by other principals if those crimes are the foreseeable, ordinary and probable consequences of the preparation or execution of the unlawful act. Everett v. State, 153 Tex.Cr.R. 79, 216 S.W.2d 281 (1948). See 2 Branch's Ann.P.C., Sup.2d, Section 179, page 9.

The attempted escape was initiated by one of the principals when he pointed a gun at a guard, then shot and wounded him when he attempted to disarm the prisoner. Shortly thereafter, three co-principal prisoners at gun point forced another guard to remove his uniform including $317.00 in the trousers. The uniform was found later after the escape attempt was thwarted.

The robbery of a guard during an armed escape attempt is a probable consequence of the execution of the escape plans. Thus, all principals in the attempted escape are liable for the robbery as a principal. After appellant entered a plea of guilty before the jury to the attempted escape, and the State proved the robbery during a later part of the escape attempt, the evidence was then sufficient to support the convictions in both cases. Since there is sufficient evidence showing that some of the principals had committed the robbery during the execution of the attempted jail escape, the evidence is sufficient to find the appellant, an admitted principal in the attempted escape, guilty of robbery.

The appellant contends the trial court erred in requiring certain witnesses called by appellant's co-defendants to wear jail uniforms and handcuffs while testifying in the presence of the jury.

Co-defendant Bridger called two Dallas County jail prisoners, Boykin and Culver, both of whom were handcuffed and

---

1. Bridger appealed from his convictions of robbery by assault and attempted escape with firearms and they were affirmed in a per curiam opinion.

dressed in Dallas County jail uniforms when brought into the courtroom, to testify. Co-defendant Warren introduced the testimony of four men, all of whom were dressed in Dallas County jail uniforms and were handcuffed while testifying before the jury. The record shows that the first two witnesses in handcuffs and jail uniforms testified without objection to the wearing of the jail uniforms. Objections were made only to the wearing of handcuffs in front of the jury. These objections were made before the jury after the witnesses were called but before they began their testimony. Th other prisoners called as witnesses were on the stand before the objections were made to both the uniform and the handcuffs.

One day before the close of the trial, the trial judge filed a statement with the district clerk detailing his reasons for having these witnesses brought into the courtroom handcuffed and in jail clothes.

The trial judge found that the five dangerous defendants had tried to escape from the Dallas County jail; that prior to the beginning of the trial on the merits, defense counsel, including counsel for appellant, told the court and the prosecution that they were concerned with the safety of themselves and all the persons in the courtroom as there had been an indication that the defendants would try to escape by breaking the plastic water cups and pitchers on counsel tables, grabbing a juror or someone else as a hostage and attempting to escape the courthouse.

The judge further found that after the jurors had retired for the day, during the course of the trial and prior to the defense calling any witnesses, appellant and co-defendant Warren scuffled with the bailiffs, kicked chairs and tables and screamed obscenities and that it was necessary to physically restrain the defendants before removing them from the courtroom.

The judge listed the names of 25 people who were possible witnesses in the case, together with their various prior criminal records. This list contained information on all the co-defendants and all prisoner witnesses except Boykin, the first prisoner witness he called.

■■ Many cases expound on the situation where the defendant is shackled or in a jail uniform while in the courtroom in the presence of the jury. The required, unwilling appearance in jail uniform, handcuffs or both infringes upon the fundamental right to a presumption of innocence. Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971). This same presumption of innocence does not apply to witnesses for they are not the ones on trial. However, possible prejudice to a defendant should be avoided unless there are sufficient reasons to have his witnesses appear handcuffed and in jail clothing.

The American Bar Association Standards, Trial by Jury, Section 4.1, pages 91–92, apply the same standards to witnesses and defendants:

"* * *

"(b) An incarcerated defendant or witness should not be required to appear in court in the distinctive attire of a prisoner or convict.

"(c) Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge had found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt."

■■ It is within the discretion of the trial judge to require uniforms and handcuffs for a defendant. See Ex parte Slaton, Tex.Cr.App., 484 S.W.2d 102 (1972); Hernandez v. Beto, supra, and Kennedy v. Cardwell, 487 F.2d 101 (6th Cir. 1973).

**278**

We hold that it is within his discretion to require that witnesses be dressed in uniforms and be shackled, if the circumstances so warrant.

█ The test on appeal is whether the trial court abused its discretion in requiring the witnesses to appear in jail uniforms and in handcuffs. To enable this Court to review the trial court's action on appeal, the record should contain the factual matters on which the trial court's discretion was based. It must appear in the record that in exercise of its discretion the trial court had a fair knowledge and understanding of all such factual matters. See 56 Tex.Jur.2d, Trial, Section 59, and Kennedy v. Cardwell, supra.

█ In a case where a defendant was tried in handcuffs, this Court wrote that if for security reasons handcuffs are necessary the trial judge should have the record clearly reflect the reasons therefor. That record must affirmatively reflect those reasons, not in general terms but with particularity. See Romero v. State, Tex.Cr. App., 493 S.W.2d 206 (1973). Walthall v. State, Tex.Cr.App., 505 S.W.2d 898 (1974). The trial judge should give his reasons where objections are made to a witness testifying for a defendant in jail clothing or in handcuffs and instruct the jury to not consider the restraint in assessing the proof and determining guilt. See the Commentary in American Bar Association Standards, supra.

█ Here, the judge listed in detail his reasons for requiring the witnesses in question to appear in handcuffs and uniforms. It appears that he felt it necessary to take these precautions to preserve order in the courtroom. All of the witnesses in question were in tank 6MM2 at the time of the attempted escape and three of them had apparently been charged with the attempted escape. We cannot say that he abused his discretion under the circumstances presented.

No reversible error has been shown; the judgments are affirmed.[2]

2. Other grounds of error and contentions along with a more detailed statement of the facts appear in Part II for the benefit of the parties. Part II is not for publication. It is a matter of record, but it will not be cited or accepted as authority in any other case. It contains no new questions of law. The matters discussed are:

(1) the evidence in more detail;

(2) the sufficiency of the admonishment by the court before accepting the plea of guilty;

(3) the refusal of the court to charge on circumstantial evidence;

(4) an alleged communication by the court to the jury when part of the testimony was read; and

(5) argument where the objection was sustained and the jury instructed not to consider it.

No reversible error is shown in any of the grounds of error. The publication of Part II would add nothing to our jurisprudence. It would only add to the number of books that must be purchased by attorneys, judges and libraries and would hinder rather than help researchers. We have utilized per curiam opinions in many instances to accomplish this purpose.