

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00167-CR

_____

MARLON GORDON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 34405-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

During the jury trial of Marlon Gordon for delivery of cocaine, after the State elicited testimony from a confidential informant, a detective, and a forensic scientist, establishing Gordon's delivery of cocaine, Gordon called inmate Anthony Hollis to testify. Over Gordon's objection, Hollis was required to testify in prison clothing and shackles. The jury found Gordon guilty of delivering more than four grams but less than 200 grams of cocaine to Larry Muckleroy, the informant. The jury later assessed Gordon's punishment at ten years' imprisonment and a fine of $5,000.00. We affirm the trial court's judgment because (1) sufficient evidence supports Gordon's conviction and (2) requiring Hollis to testify in jail clothes was not reversible error.

## *(1) Sufficient Evidence Supports Gordon's Conviction*

In two appellate issues, Gordon contends the evidence is legally and factually insufficient to support his conviction. In reviewing a challenge to the legal sufficiency of the evidence, Texas courts ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard requires the reviewing court to accord deference to the fact-finder's duty to resolve conflicts in testimony and other evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In determining legal sufficiency, we must review all of the evidence, both that which was properly admitted and that which was improperly admitted, to determine whether the combined and cumulative force of all the evidence

2

(direct, circumstantial, or both) supports the verdict when such evidence is viewed in the light most favorable to that verdict. *Id.*; *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "Evidence may be factually insufficient if: '1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against the great weight and preponderance of the available evidence.'" *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007) (quoting *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). "Such a factual sufficiency review requires the reviewing court to consider all of the evidence." *Id.* (citing *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). "A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *Id.* (citing *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003); *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)).

The State called Muckleroy, Davis Merrell, and Chance Cline as witnesses against Gordon. Gordon called Hollis to testify. The testimony of each may be summarized as follows:

Muckleroy told the jury that he knew Gordon through another person, Hollis, who sold Muckleroy drugs. Muckleroy testified he had known Gordon and Hollis for close to twenty years. Muckleroy admitted that he had been involved in trafficking powder and crack cocaine for several years and that he had recently become a confidential informant for the County Organized Drug Enforcement (C.O.D.E.) Unit.

3

On April 26, 2005, Muckleroy was working as a confidential informant for the C.O.D.E. Unit. Muckleroy had made an arrangement with Hollis to buy a quantity of cocaine. C.O.D.E. officers met with Muckleroy before he was to buy the cocaine; the officers supplied Muckleroy with a video camera and microphone, which Muckleroy was to use in recording the narcotics transaction between himself and Hollis. Muckleroy then went to the agreed on location and waited for Hollis to arrive. Hollis eventually arrived, riding in a white Ford F-150 pickup truck being driven by Gordon. Muckleroy then exited his vehicle, approached Gordon's truck, argued with Hollis about the price of the drugs, and subsequently made the narcotics purchase. During the exchange, Hollis retrieved the cocaine from the center console of the truck being driven by Gordon and handed the narcotics to Muckleroy in exchange for money. Muckleroy then returned to his truck and left the scene, after which he met up with C.O.D.E. agents and gave them the cocaine he had purchased from Hollis.

Muckleroy identified State's Exhibit 3 as the cocaine he had purchased April 26 from Gordon. Muckleroy also identified State's Exhibit 1 as video and audio recordings of himself, Hollis, and Gordon concerning the events that occurred on the date in question.

On cross-examination, Muckleroy denied having any type of agreement with the C.O.D.E. officers to become a confidential informant in exchange for C.O.D.E. either helping Muckleroy with any pending charges or helping a friend of Muckleroy with any pending charges, nor did Muckleroy receive any monetary compensation for his work as an informant.

4

Merrell testified that he is a detective with the Kilgore, Texas, Police Department and a member of the C.O.D.E. Unit. Merrell explained for the jury how the C.O.D.E. Unit works to arrange "controlled buys" of narcotics from suspected narcotics traffickers using confidential informants. The officer then told the jury how C.O.D.E. used Muckleroy as a confidential informant on April 26, 2005, to purchase narcotics from Hollis, a man the task force suspected of being a drug dealer: Muckleroy was to use $350.00 in cash provided by the C.O.D.E. officers to purchase crack cocaine from Hollis. Muckleroy's vehicle was also thoroughly searched before he was allowed to leave to meet with Hollis; this search of Muckleroy's truck was meant to insure Muckleroy was "not holding any kind of contraband" that could later be falsely said to have come from the suspected drug dealer and thereby "interfere with the prosecution of a case." The search revealed no contraband or weapons of any kind, and Muckleroy himself was then fitted with a transmitter capable of broadcasting audio and visual signals to a remote recording device that is capable of capturing images on videotape.

Merrell later watched Muckleroy exit his truck, approach the parked vehicle[1] in which Hollis was sitting, and talk to Hollis. After Muckleroy completed the transaction, Merrell and other C.O.D.E. agents followed Muckleroy back to a prearranged remote location. There Merrell and

---

[1]Merrell testified Muckleroy and Hollis met at a convenience store located in Gregg County, Texas.

5

other officers again searched Muckleroy, searched his truck, and took possession of the cocaine Muckleroy had just purchased from Hollis.[2]

Merrell also testified that, based on his years of experience and training in the field of narcotics investigation and law enforcement, he believed Gordon was knowingly working as Hollis' driver on the day in question as part of a larger effort to knowingly assist and aid Hollis' narcotics trafficking efforts.[3] Merrell also opined that State's Exhibit 1 reflected that Gordon received some of the proceeds of the narcotics sale once the drug deal between Hollis and Muckleroy was completed. Merrell also pointed out that Gordon clearly witnessed the drug sale take place, yet took no affirmative steps to stop the criminal activity.

On cross-examination, Merrell admitted that State's Exhibit 1 does not clearly show money changing hands from Muckleroy to Hollis, nor does it show the drugs being passed from Hollis to Muckleroy.

Cline testified that he is a forensic scientist with the Texas Department of Public Safety's Tyler Laboratory; he holds a Bachelor of Science degree in chemistry, completed several months of job-related training with the D.P.S., and has been employed with D.P.S. since May 2005. As it relates to this case, Cline analyzed the contents of State's Exhibit 3 to determine what, if any,

---

[2]Merrell later identified State's Exhibit 3 as being the same cocaine he had taken from Muckleroy after the latter purchased it from Hollis. State's Exhibit 3 was admitted during Cline's testimony.

[3]Merrell had received previous information that Gordon might likely be one of Hollis' drivers in the drug trade.

6

narcotics the exhibit contained. Cline's analysis revealed State's Exhibit 3 contained 9.40 grams of a white, rock-like substance containing a form of cocaine base. Cline further testified that the slang characterization of the contents of State's Exhibit 3 would be crack cocaine. Cline's official report of his analysis was admitted into evidence as State's Exhibit 3.

Gordon's witness, Hollis, admitted to the jury that he had recently been convicted of delivery of a controlled substance in the 188th Judicial District Court of Gregg County for selling over nine grams of cocaine to Muckleroy April 26, 2005. Hollis pled guilty to that charge and received a twenty-year sentence. Hollis also has at least one other prior drug conviction.

According to Hollis' testimony, Gordon drove Hollis to the location where Hollis and Muckleroy had agreed to meet. Hollis, however, claimed Gordon did not knowingly aid or assist Hollis in selling the drugs; Hollis said Gordon did not know Hollis wanted to be driven somewhere for the purpose of selling drugs. Hollis also claimed he never showed Gordon the drugs, and they were kept inside Hollis' pocket during the entire trip until the point at which Hollis transferred the cocaine to Muckleroy pursuant to the sales agreement. Hollis also told the jury that, on the day in question, he left the truck in which Gordon was the driver and then went to Muckleroy's truck to make the sale.

Gordon acknowledges in his appellate brief that our law confers criminal responsibility for the conduct of another if the person acts with intent "to promote or assist the commission of the offense . . . aids . . . the other person to commit the offense . . . ." TEX. PENAL CODE ANN.

7

§ 7.02(a)(2) (Vernon 2003). Testimony from Hollis, Muckleroy, and Merrell, and the videotape show that Gordon drove Hollis to the location of the drug sale. Muckleroy's and Merrell's testimonies and the videotape evidence support the conclusion that Gordon knew he was driving Hollis to the location for the purpose of selling drugs to Muckleroy, or at least suggest Gordon was more than a mere innocent bystander. In fact, the videotape shows Gordon talking with Muckleroy during the drug sale, shows Gordon watching the money and drugs being exchanged, and (according to Merrell's testimony) Gordon can be seen receiving some of the proceeds of the sale from Hollis (although we could not clearly see such conduct on our version of the exhibit that was filed with the appellate record). The videotape also shows Gordon periodically looking around the exterior of the parked truck, checking his rearview and side mirrors—conduct that the jury would have been free to believe suggested he was acting as a "lookout" for Hollis while the drug transaction was completed and was thus more than a mere unknowing and innocent chauffeur.

By contrast, Hollis told the jury that Gordon had no foreknowledge of Hollis and Muckleroy's planned drug transaction. Hollis also testified that Gordon did nothing to assist, aid, and promote the direct sale made by Hollis to Muckleroy. Accordingly, this testimony by Hollis, if believed by the jury, would effectively negate the State's evidence to the contrary. But by its verdict, it is clear the jury chose to believe the testimonies of Muckleroy and Merrell, as well as the videotaped evidence and the reasonable inferences that can be drawn from the entirety of the State's case, to conclude Gordon took affirmative steps to assist, aid, and promote Hollis' drug sale to Muckleroy,

8

thereby making him an accomplice as a matter of law and criminally liable for the entirety of the conduct.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude the jury's finding of guilt is supported by legally sufficient evidence. Gordon's conduct of driving Hollis to the drug sale, of acting as a lookout during the negotiation of the sale, and of receiving proceeds from that sale support the conclusion that Gordon had engaged in some form of culpable conduct before, during, and/or after the crime to support imposing criminal responsibility. *Cf. Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (evidence sufficient to show defendant acted as party to murder, if not primary shooter, because he was present and took affirmative steps during crime's commission to promote robbery-murder scheme); *Mullins v. State*, 173 S.W.3d 167, 176–77 (Tex. App.—Fort Worth 2005, no pet.) (evidence sufficient to show defendant acted as party, if not principal, in manufacturing methamphetamine). Similarly, viewing all the evidence in a neutral light, we conclude the evidence supporting the jury's verdict is not so substantially outweighed by contrary evidence that the guilty verdict appears to be manifestly unjust. We, therefore, conclude factually sufficient evidence supports the jury's verdict.

We overrule Gordon's evidentiary sufficiency points of error.

### (2) *Requiring Hollis to Testify in Jail Clothes Was Not Reversible Error*

Gordon also contends the trial court erred by requiring Hollis to testify in jail clothing and shackles.

9

The record shows the trial court required Hollis to testify in the jury's presence while shackled and wearing distinctive jail inmate clothing. The record also shows Gordon's trial counsel objected to this procedure and informed the trial court that Gordon was immediately prepared to supply Hollis with noninmate clothing. In orally denying Gordon's objection, the trial court noted that this requirement regarding inmate clothing—that inmates who are to testify at trials other than their own shall wear standard issue prison clothing—was a departmental policy choice made by the Sheriff of Gregg County, and one that the trial court would not change.

Requiring an accused to appear at trial wearing distinctive jail clothing infringes on the accused's presumption of innocence guaranteed under the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 502–06 (1976). The same constitutional considerations do not, however, apply to witnesses testifying at some trial other than their own. The Texas Court of Criminal Appeals has expressly held "it is within [the trial court's] discretion to require that witnesses be dressed in uniforms and be shackled, if the circumstances so warrant." *Thompson v. State*, 514 S.W.2d 275, 278 (Tex. Crim. App. 1974); *see also Gibson v. State*, 233 S.W.3d 447, 453–54 (Tex. App.—Waco 2007, no pet.). On appeal, the reviewing court must determine whether the trial court abused its discretion by requiring the witness to appear before the jury wearing shackles and/or a jail uniform. *Gibson*, 233 S.W.3d at 453 (citing *Thompson*, 514 S.W.2d at 278). If we conclude the trial court abused its discretion, we must determine harm under Rule 44.2(a) of the Texas Rules of

10

Appellate Procedure and determine whether we believe, beyond a reasonable doubt, that the error "did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2(a).

"To enable this Court to review the trial court's action on appeal, the record should contain the factual matters on which the trial court's discretion was based. It must appear in the record that in exercise of its discretion the trial court had a fair knowledge and understanding of all such factual matters." *Thompson*, 514 S.W.2d at 278. The record should contain the trial court's reasons for requiring the restraints and a jury instruction not to consider those things in rendering its verdict. *Id.* In *Thompson*, the trial court filed a lengthy statement explaining its reasons for requiring certain witnesses to appear in jail clothes and shackles. *Id.* at 277–78.

Before requiring Hollis to testify in jail clothing and in shackles, the trial court inquired as to whether Hollis had yet been found guilty in his own criminal trial. Gordon's counsel answered affirmatively; counsel further volunteered the information that Hollis had been sentenced to twenty years' imprisonment on that charge and that, with the assistance of the district attorney's office, Gordon was able to have Hollis "bench warranted" from prison to testify at trial. The only reason that was given by the trial court and that appears in the record in this case (for requiring Hollis to testify in jail clothes) was, "I don't want to interfere with the policy of another department."

The State now suggests that the trial court might have determined that Hollis presented a flight risk because he had already been sentenced to a prison term. The State further suggests the reason behind the sheriff's policy of requiring jail inmate witnesses to testify in uniforms is that "a

11

witness who is incarcerated at the time of the testimony could attempt to escape incarceration before or after testifying, while unshackled or changing clothes." While the State's suggestions may be correct, the record before us does not reveal any indication that the trial court factored such considerations into the reason for reaching its decision. Instead, the sole reason given by the trial court is that the court did not want to interfere with another department's internal policies. Nothing suggests that the court made any independent decision, but instead relied solely on the sheriff's department's policy. We conclude such a rationale, absent additional considerations expressly supported by the appellate record, is insufficient to support a trial court's decision to require an inmate to wear jail clothing while testifying on behalf of the accused. Therefore, the trial court erred.

On direct examination by Gordon's counsel, Hollis admitted that he had been convicted of delivery of a controlled substance and received a twenty-year sentence. Such testimony would also have been a proper matter of impeachment by the State on cross-examination, regardless of the witness' attire. *See* TEX. R. EVID. 609. Therefore, it was inevitable that the jury would find out Hollis was a convicted felon and had been brought from prison to testify on Gordon's behalf. It is quite doubtful that Hollis' appearance in jail clothing would have had any greater impact on the jury's credibility determination than simply hearing Hollis himself admit to being a convicted drug dealer. Moreover, the Texas Court of Criminal Appeals has required, in a case similar to this one, that the appellate record must disclose harm. *Kimble v. State*, 537 S.W.2d 254, 255 (Tex. Crim. App. 1976). Our review of the record reveals no such harm.

12

Additionally, like the court in *Kimble*, we have reviewed the record and have concluded the evidence against Gordon is quite strong.  We therefore conclude beyond a reasonable doubt that the trial court's error of requiring Hollis to testify in a jail uniform and shackles did not contribute to Gordon's conviction or punishment.

We overrule Gordon's final point of error and affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     May 30, 2008
Date Decided:       July 16, 2008

Publish