NUMBER 13-10-00531-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

JARET ROBERSON,                                                            Appellant,

 

v.

 

THE STATE OF TEXAS,                                    Appellee.

                                                                     


 

On appeal from the 130th
District Court

of Matagorda County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

       Before
Chief Justice Valdez and Justices Rodriguez, and Benavides

                      Memorandum
Opinion by Justice Benavides

 

            Appellant,
Jaret Roberson, was convicted of aggravated robbery, sentenced to ten years’
confinement in the Texas Department of Criminal Justice—Institutional Division,
and assessed a $1,500 fine.  See Tex.
Penal Code Ann. § 12.32 (West Supp. 2010), §§ 29.02(a), 29.03(a) (West
2003).  By two issues, Roberson argues that:  (1) the evidence adduced at trial
was legally insufficient to support his aggravated robbery conviction; and (2)
the trial court violated the due process clause of the Fourteenth Amendment,
the Fifth Amendment, and article 46B.004 of the Texas Code of Criminal
Procedure when it failed, sua sponte, to order a mental competency evaluation
on the day of Roberson’s jury trial.  We affirm.  

I. Background

A.        Facts
Regarding Aggravated Robbery

The
record shows that on the afternoon of December 3, 2008, sixty-seven year-old
Diane Mesey was doing her weekly grocery shopping at the H.E.B. Supermarket in
Bay City, Matagorda County.  Mesey testified that, as she began to place her
groceries in the back of her vehicle, a young, “dark-complected” man approached
her.  She recalled that the man was wearing a dark hoodie with long sleeves and
shorts.  His “head was down, like [he] was trying to be unrecognized or
hidden.”  The man asked Mesey if she had a cigarette; she replied no.  Suddenly,
the man grabbed Mesey’s purse, which was hung on her left shoulder.  The man
“pulled the strap around which pulled [Mesey] forward and basically body
slammed [her] to the ground.”  Mesey testified that she was “holding on [to her
purse] for dear life because . . . what’s in [her] purse is
[her] life.”  Mesey released her purse after slamming onto the asphalt of the
parking lot.  The force of her fall caused numerous serious injuries and broke
the setting on her wedding ring.  

            Investigator
Tommy Lytle testified that, after being called, officers followed a young black
male wearing a black pullover and light-colored shorts to a house three blocks
away from the H.E.B.  The male was eventually identified as Roberson. 
Investigator Lytle stated that officers persuaded Roberson to come out from
underneath the house where he was hiding and surrender.  Officers later found
Mesey’s purse and other belongings in a storage shed behind the house where Roberson
was hiding.  Officers transported Roberson back to the H.E.B. where Mesey was
being treated by emergency medical technicians.  Mesey told the officers that
she did not recognize Roberson’s face, because her assailant had hidden his
face when he attacked her, but that Roberson was wearing identical clothing to
the man who snatched her purse.  At the hospital, physicians diagnosed Mesey
with a fractured cheekbone, a partially crushed left orbital socket, a broken
left shoulder, and a broken left hip.  Doctors had to insert metal pins to help
support her left hip; Mesey now walks with a permanent limp as the pins caused
her left leg to be shorter.  

After
being taken to the police station, Roberson signed a statement that admitted
the following:

On today, Wednesday, December the 3rd,
2008, me, Brian White, and Deandre Sardinea all went to Jack in the Box to get
something to eat.  After we ate, we walked to H.E.B. and Brian and Deandre went
inside.  I stayed outside and I watched for an old lady so I could take her
purse.  I saw an old lady come out of the store, and she was pushing a basket
of groceries.  She pushed it to her car, and she was trying to put her
groceries up.  And I walked up to her and asked her for a cigarette.  She said
she didn’t have one.  She had a purse, and she had it over her arm while she
was putting her groceries up in her car.  I grabbed the purse, and I think she
tried to hold on to the purse.  And I yanked it, and she fell to the ground. 
That’s when I took off running with the purse to the alley.  I ran down a
little alley, and I was hiding in a little house in the alley when the police
got me. . . .

 

            Roberson
was indicted for aggravated robbery on June 17, 2009.  He pleaded not guilty.  




B.        Facts
Regarding Mental Competency Challenge

Prior
to trial, Roberson’s counsel filed a Motion for Psychiatric Examination of
Defendant, requesting that Roberson undergo a mental competency exam because
Roberson refused to speak, much less cooperate, with his lawyer.  The motion,
in relevant part, provided as follows:

Counsel for the Defendant believes
that the Defendant may not be competent to stand trial, or that the Defendant
is suffering from a mental or psychiatric disease, disorder, or defect, in that
Counsel has attempted to conduct interviews and discussions with the Defendant,
at which time Defendant was unable to communicate adequately or effectively
with or to assist counsel in the matters pertaining to the case that is the
subject of this prosecution.  Furthermore, the Defendant appeared not to have a
rational or factual understanding of the proceeding against him.  Further, in
discussions with Defendant’s family, Defendant has had a prolonged personal
history of mental [in]competency.

 

The
trial judge granted this request and ordered Dr. Michael A. Fuller, “a
disinterested expert experienced and qualified in mental health,” to examine
Roberson with regard to his ability to stand trial.  Dr. Fuller eventually
conducted a psychiatric examination of Roberson and wrote a report, the
contents of which were sealed.  However, based on our review of the record, it
appears that Dr. Fuller proclaimed Roberson competent to stand trial.

The
day of the trial, September 7, 2010, and prior to voir dire, a pretrial hearing
was held, in which the following exchange occurred:

Q.        [The
Court]. Okay.  The record will reflect the Defendant, Mr. 

Roberson, is present in the courtroom
with counsel and Mr. Reis is present for the State and the jury panel has been
excluded from the courtroom.  Do you have a matter to present?

 

A.        [Mr.
Faden, Counsel for Roberson]. Yes.  We were here, the Court 

may recall, we were here two weeks
ago.  I brought it to your attention that Mr. Roberson was not communicating
with me—or would not communicate with me and he was brought into the courtroom
and you examined him and he would communicate with you, I think was the
determination today.

 

Today Mr. Roberson is exhibiting the
same behavior.  He will not communicate with me, and I’m being told from the
jail personnel that he’s exhibiting some bizarre behavior at the jail.

 

So, I’m in a quandary as to how to
proceed today.  Whether or not Mr. Roberson is not acting appropriately on
purpose or not, I’m not in a position to be able to make that determination. 
So, I’m going to defer to the Court for that determination.  

 

Q.        [The
Court.] Mr. Reis, we’re looking at the Court’s file; and do you 

remember the day of the hearing we
had?  It wasn’t that long ago?

 

A.        [Mr.
Faden]. It was about two weeks ago from last Thursday, I 

think.

 

A.        [Mr. Reis].    Our notes
show, your Honor, that we were here 

August 18th.

 

Q.        [The
Court]. And then the Court’s recollection at that time was that 

Mr. Roberson—it’s accurate as to what
you’ve reflected, that you had indicated that concern to the Court.  Mr.
Roberson was brought out and examined and he answered the Court’s questions
and, including the question of why he chose not to communicate with his
attorney, and I’m going to paraphrase his answer, which was along the lines of
“I don’t care.”  And we can argue the strategic quality of that answer, but it
was rational to the questions that the Court was asking at the time.  

 

So, today his behavior is consistent
with what we heard the other day in front of the Court.  So, my position is
going to be, Counsel, if you want to put on evidence that might indicate to the
Court that he has somehow lost competency since August 18th, that we’ll receive
that evidence.  Otherwise, he’s been examined.  I believe he’s been examined
for competency; determined competent; and the Court did a further examination
just a few days ago, which Mr. Roberson responded appropriately to the
questions, meaning that he answered the questions, whether or not the answers
were—as far as my understanding is, he is entitled not to communicate with his
attorney if he chooses not to.

 

Roberson’s
counsel proceeded to put on evidence regarding Roberson’s alleged mental
incompetency.  Damon Miskell, a Matagorda County deputy, testified that that
morning, officers found Roberson naked, kneeling on his knees in his bed,
looking straight up, and drooling profusely.  He refused to speak with the
officers, and the officers moved him to a padded cell.  Deputy Miskell also
testified that he had not seen Roberson speak to anyone in the last two weeks. 
However, on cross-examination, Deputy Miskell admitted that Roberson seemed
fully aware of his surroundings and was paying attention to the testimony
during the hearing, although he refused to speak.  The trial court then
attempted to ask Roberson questions:

Q.        [The Court]. Mr. Roberson,
you understand that you are—Mr. 

Roberson, you understand that you’re
charged with 

the offense of aggravated robbery?

 

A.        [Roberson].  (No response).

 

Q.        [The Court].   Do you
understand that you’re charged with the 

offense of aggravated robbery?

 

A.        [Roberson].  (No response).

 

Q.        [The Court].  Mr. Roberson,
can you identify in the courtroom your 

attorney?

 

A.        [Roberson].  (No response).

 

Q.        [The Court].  Mr. Roberson,
can you hear me?

 

A.        [Roberson].  (No response).

 

Q.        [The Court].  The record is
going to reflect that Mr. Roberson is 

making eye contact with the Court when
the Court 

speaks
but, otherwise, has been nonresponsive to the Court’s questions.

 

The
trial court determined that Roberson was competent to stand trial, and a jury
was then selected.  Prior to opening arguments, though, counsel for Roberson
again requested a hearing outside the presence of the jury.  This time, Roberson’s
counsel told the trial court that Roberson refused to dress in the street
clothes his attorney provided him for trial.  This refusal, Roberson’s counsel
explained, meant that Roberson would begin the trial wearing his standard jail
uniform.[1]
 In response, the prosecution called the trial court’s bailiff Bill
Orton.  Bailiff Orton testified that he heard Roberson say that “he didn’t
care” about wearing jail clothing to his trial.  The court then asked Roberson
the following:

Q.        [The
Court].             Before we go into the courtroom, Mr. Roberson, 

                                                I
need to ask you:  Do you want to be dressed 

                                                out
in your street clothes?

 

A.        [Roberson]. 
           No.

 

Q.        [The
Court].             No, you don’t?

 

A.        [Roberson]. 
           It don’t matter.

 

A.        [Court
Reporter].      It don’t matter.

 

Q.        [The
Court].             Okay.  Do you understand you have a right to 

                                                dress
in your street clothes before the jury?

 

A.        [Roberson]. 
           No.

 

Q.       [The
Court].             Okay.  You have a right, if you choose to do 

                                                so,
to be dressed in your street clothes.  Okay.  

                                                So,
if you choose to be dressed in your street 

                                                clothes,
the Court is allowing you to do that.  

                                                Do
you understand?  It’s your choice, okay?

 

A.        [Roberson]. 
           Yeah.

 

Q.       [The Court].             Okay. 
You do want to change into your street 

                                                clothes?

 

A.        [Roberson]. 
           No.  

 

Trial
began.  From the record, it appears that Roberson did change into street
clothes for the first day of trial.  However, Roberson refused to change from
his prison garb on the second day of trial.  Outside the presence of the jury,
Officer Wayne Dekle, a detention officer for the Matagorda County Sheriff’s
Office, testified that he and other officers tried to get Roberson to change
clothing but that Roberson refused to communicate with them.  In Officer
Dekle’s opinion, Roberson “was aware of what [they were] talking about.” 
Investigator Susan Maxwell testified next, stating that Roberson agreed to
change his clothes in exchange for a donut.  She also said that he stood up
when she asked him to stand up, and that her impression was that “he
underst[ood] what’s going on.”  However, Roberson did not change.  The trial
judge noted, “I believe Mr. Roberson’s been fully admonished by his attorneys
and by the Court and has chosen to appear despite whatever consequences may
fall regarding the perception of the jury about him by virtue of his
appearance. . . . [T]he Court sees no option at this point but to proceed with
the case.”

The
jury found Roberson guilty of aggravated robbery, sentenced him to ten years in
prison, and ordered him to pay a $1,500 fine.  This appeal ensued.




II.
Sufficiency of the Evidence

            By his first issue, Roberson contends
that the evidence adduced at trial was insufficient to support his conviction
for aggravated robbery.

A.        Standard
of Review

Our
only sufficiency review should be under “a rigorous and proper application” of
the Jackson v. Virginia standard of review.  Brooks v. State, 323
S.W.3d 893, 906 (Tex. Crim. App. 2010).  Under this standard, “the relevant
question is whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Jackson v. Virginia,
443 U.S. 307, 319 (1979); see Brooks, 323 S.W.3d at 902 n.19.  “[T]he
fact-finder’s role as weigher of the evidence is preserved through a legal
conclusion that upon judicial review all of the evidence is to be
considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The
jury, in all cases, is the exclusive judge of facts proved and the weight to be
given to the testimony . . . .”); Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.–Corpus Christi 2002, pet. ref’d).  Under a hypothetically correct jury
charge, the State was required to prove beyond a reasonable doubt that
Roberson:  (1) in the course of committing theft; (2) with intent to obtain and
maintain control of property; (3) intentionally or knowingly; (4) caused bodily
injury to another person; (5) who was 65 years of age or older.  See Tex. Penal Code Ann. §§ 29.02, 29.03(a);
Robinson v. State, 596 S.W.2d 130, 132 (Tex. Crim. App. 1980); Santos
v. State, 116 S.W.3d 447, 457 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d).

B.        Analysis

            The evidence showed that, shortly
after the incident, Mesey identified Roberson as the man wearing the same
clothing as the attacker who snatched her purse and that police officers found
Mesey’s purse and personal belongings near the home where Roberson had hidden. 
In his written statement, Roberson admitted that he deliberately “watched for
an old lady so [he] could take her purse” in the H.E.B. parking lot, and
eventually followed through with his intentions when he pursued Mesey and
forcefully took her purse.  Mesey testified that she was sixty-seven years old
at the time of her assault (she was sixty-nine years old at the time of
trial).  She also, in great detail, explained the nature of her injuries after
her purse was snatched:  she experienced a fractured cheekbone, a partially
crushed left orbital socket, a broken left shoulder, and a broken left hip.  Mesey
explained to the jury that she walks with a limp to this day because her left
leg is shorter than the other.  

Viewing
the evidence in the light most favorable to the prosecution, we find that any
rational trier of fact could have found the essential elements of aggravated
robbery beyond a reasonable doubt.  See Jackson, 443 U.S. at 319; Brooks,
323 S.W.3d at 902 n.19; see also Tex.
Penal Code Ann. §§ 29.02, 29.03(a).  We thus conclude that the evidence
was sufficient to support Roberson’s conviction and overrule his first issue.

III.        Sua
Sponte Mental Competency Evaluation

            By
his second issue, Roberson argues that the trial court violated the due process
clause of the Fourteenth Amendment, the Fifth Amendment, and article 46B.004 of
the Texas Code of Criminal Procedure when it failed, sua sponte, to order a
mental competency evaluation on the day of Roberson’s jury trial.  

A.        Standard
of Review and Applicable Law

            A
trial court’s decision on whether to conduct a competency inquiry is reviewed
under an abuse of discretion standard.  Moore v. State, 999 S.W.2d 385,
393 (Tex. Crim. App. 1999); Gray v. State, 257 S.W.3d 825, 827 (Tex.
App.—Texarkana 2008, pet. ref’d); LaHood v. State, 171 S.W.3d 613,
617–18 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).  A defendant is
presumed competent to stand trial and shall be found competent to stand trial
unless proved incompetent by a preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art. 46B.003(b)
(West 2006).  “A competency hearing is not required unless the evidence is
sufficient to create a bona fide doubt in the mind of the judge whether the
defendant meets the test of legal competence.”  Moore, 999 S.W.2d at
393.  A person is incompetent to stand trial if he does not have (1) sufficient
present ability to consult with his attorney with a reasonable degree of
rational understanding, or (2) a rational as well as factual understanding of
the proceedings against him.  Tex. Code
Crim. Proc. Ann. art. 46B.003(a).  

            If
evidence is brought to the trial court raising a bona fide doubt as to the
defendant’s competency, the court must conduct an informal inquiry outside the
presence of the jury to determine whether there is evidence to support a finding
of incompetency to stand trial.  Id. art. 46B.004.  “In the inquiry, the
court must determine whether there is ‘some evidence’ to support a finding of
incompetency, and, if the court so finds, it must then commence a hearing
before a jury.”  LaHood, 171 S.W.3d at 618 (quoting McDaniel v. State,
98 S.W.3d 704, 710 (Tex. Crim. App. 2003)).   Evidence which can create a bona fide
doubt may “come from the trial court’s own observations, known facts, evidence
presented, motions, affidavits, or any other claim or credible source.”  Id.
(citing Brown v. State, 129 S.W.3d 762, 765 (Tex. App.—Houston [1st
Dist.] 2004, no pet.)).  Bona fide doubt can be created if the evidence shows
“recent, severe mental illness, at least moderate retardation, or truly bizarre
acts by the defendant.”  McDaniel, 98 S.W.3d at 710 (quoting Alcott
v. State, 51 S.W.3d 596, 602 (Tex. Crim. App. 2001)).  “If evidence
warrants a competency hearing, and the trial court denies such hearing, the
defendant is deprived of his constitutional right to a fair trial.”  LaHood,
171 S.W.3d at 618.

B.        Analysis

            Here, the evidence was not sufficient
to create a bona fide doubt regarding Roberson’s mental competency on the day
of trial.  We note that the court previously granted a Motion for Psychiatric
Examination of Defendant and that an independent, disinterested expert, Dr.
Fuller, opined that Roberson was competent to stand trial.  On the day of
trial, there was conflicting testimony regarding Roberson’s state of mind. 
Although Deputy Miskell testified that Roberson was found naked, kneeling on
his knees in his bed, looking straight up, and drooling profusely, he also
testified that Roberson appeared to be following the pretrial proceedings and
was aware of his surroundings.  When the trial court attempted to speak with
Roberson, Roberson refused to answer; however, later that same day, when the
trial court informed Roberson about his option to change his clothing, Roberson
admitted that “it didn’t matter” to him.  Bailiff Orton testified that he heard
Roberson say that “he didn’t care” about wearing jail clothing to his trial. 
On the second day of trial, Officer Dekle testified Roberson “was aware” about
the impact of wearing prison garb to trial, and Investigator Maxwell testified
that Roberson agreed to change his clothes in exchange for a donut.  She also
said that he stood up when asked, and that her impression was that “he
underst[ood] what’s going on.”  This testimony reflects that Roberson had a
rational as well as factual understanding of the proceedings against him.  See
Tex. Code Crim. Proc. Ann.
art. 46B.003(a).  

            We
conclude that the trial court did not abuse its discretion when it did not order
a mental competency evaluation on the day of Roberson’s jury trial.  The
evidence was not sufficient to raise a “bona fide” doubt regarding Roberson’s
competence—there was no proof of “severe mental illness, moderate retardation,
or truly bizarre acts by the defendant.”  Instead, it appears that Roberson
made deliberate choices concerning when he would communicate with others.   His
failure to cooperate in his defense seemed purposeful, and his failure to
change out of his prisoner’s uniform and into street clothes reflected his
stated attitude on the record that he simply “didn’t care.”  As the Texas Court
of Criminal Appeals has noted, albeit under different circumstances, “if such
actions were probative of incompetence, one could effectively avoid criminal
justice through immature behavior.”  Moore, 999 S.W.2d at 395 (finding
that defendant’s “unruly and disruptive courtroom demeanor” was “timely,
topical, and logically related” to the trial court’s proceedings).  In light of
the foregoing, we overrule Roberson’s second issue.




IV.       Conclusion

            Having
overruled both of Roberson’s issues, we affirm the decision of the trial
court.  

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Do not publish.

Tex. R. App.
P. 47.2(b).

 

Delivered and filed the

25th day of August, 2011. 

 









[1] See Thompson v. State, 514 S.W.2d 275, 277 (Tex. Crim. App.
1974) (holding that defendants should not appear for trial handcuffed or in
jail clothing unless there are sufficient reasons to do so, as the appearance
of such might prejudice the defendant’s presumption of innocence).