

## NUMBER 13-10-00531-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JARET ROBERSON,                                                         **Appellant,**

**v.**

THE STATE OF TEXAS,                                                    **Appellee.**

### On appeal from the 130th District Court
### of Matagorda County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Jaret Roberson, was convicted of aggravated robbery, sentenced to ten years' confinement in the Texas Department of Criminal Justice—Institutional Division, and assessed a $1,500 fine. *See* TEX. PENAL CODE ANN. § 12.32 (West Supp. 2010), §§ 29.02(a), 29.03(a) (West 2003). By two issues, Roberson argues that: (1)

the evidence adduced at trial was legally insufficient to support his aggravated robbery conviction; and (2) the trial court violated the due process clause of the Fourteenth Amendment, the Fifth Amendment, and article 46B.004 of the Texas Code of Criminal Procedure when it failed, sua sponte, to order a mental competency evaluation on the day of Roberson's jury trial. We affirm.

## I. BACKGROUND

### A. Facts Regarding Aggravated Robbery

The record shows that on the afternoon of December 3, 2008, sixty-seven year-old Diane Mesey was doing her weekly grocery shopping at the H.E.B. Supermarket in Bay City, Matagorda County. Mesey testified that, as she began to place her groceries in the back of her vehicle, a young, "dark-complected" man approached her. She recalled that the man was wearing a dark hoodie with long sleeves and shorts. His "head was down, like [he] was trying to be unrecognized or hidden." The man asked Mesey if she had a cigarette; she replied no. Suddenly, the man grabbed Mesey's purse, which was hung on her left shoulder. The man "pulled the strap around which pulled [Mesey] forward and basically body slammed [her] to the ground." Mesey testified that she was "holding on [to her purse] for dear life because . . . what's in [her] purse is [her] life." Mesey released her purse after slamming onto the asphalt of the parking lot. The force of her fall caused numerous serious injuries and broke the setting on her wedding ring.

Investigator Tommy Lytle testified that, after being called, officers followed a young black male wearing a black pullover and light-colored shorts to a house three blocks away from the H.E.B. The male was eventually identified as Roberson.

2

Investigator Lytle stated that officers persuaded Roberson to come out from underneath the house where he was hiding and surrender. Officers later found Mesey's purse and other belongings in a storage shed behind the house where Roberson was hiding. Officers transported Roberson back to the H.E.B. where Mesey was being treated by emergency medical technicians. Mesey told the officers that she did not recognize Roberson's face, because her assailant had hidden his face when he attacked her, but that Roberson was wearing identical clothing to the man who snatched her purse. At the hospital, physicians diagnosed Mesey with a fractured cheekbone, a partially crushed left orbital socket, a broken left shoulder, and a broken left hip. Doctors had to insert metal pins to help support her left hip; Mesey now walks with a permanent limp as the pins caused her left leg to be shorter.

After being taken to the police station, Roberson signed a statement that admitted the following:

> On today, Wednesday, December the 3rd, 2008, me, Brian White, and Deandre Sardinea all went to Jack in the Box to get something to eat. After we ate, we walked to H.E.B. and Brian and Deandre went inside. I stayed outside and I watched for an old lady so I could take her purse. I saw an old lady come out of the store, and she was pushing a basket of groceries. She pushed it to her car, and she was trying to put her groceries up. And I walked up to her and asked her for a cigarette. She said she didn't have one. She had a purse, and she had it over her arm while she was putting her groceries up in her car. I grabbed the purse, and I think she tried to hold on to the purse. And I yanked it, and she fell to the ground. That's when I took off running with the purse to the alley. I ran down a little alley, and I was hiding in a little house in the alley when the police got me. . . .

Roberson was indicted for aggravated robbery on June 17, 2009. He pleaded not guilty.

3

**B.      Facts Regarding Mental Competency Challenge**

Prior to trial, Roberson's counsel filed a Motion for Psychiatric Examination of Defendant, requesting that Roberson undergo a mental competency exam because Roberson refused to speak, much less cooperate, with his lawyer.   The motion, in relevant part, provided as follows:

> Counsel for the Defendant believes that the Defendant may not be competent to stand trial, or that the Defendant is suffering from a mental or psychiatric disease, disorder, or defect, in that Counsel has attempted to conduct interviews and discussions with the Defendant, at which time Defendant was unable to communicate adequately or effectively with or to assist counsel in the matters pertaining to the case that is the subject of this prosecution.   Furthermore, the Defendant appeared not to have a rational or factual understanding of the proceeding against him.   Further, in discussions with Defendant's family, Defendant has had a prolonged personal history of mental [in]competency.

The trial judge granted this request and ordered Dr. Michael A. Fuller, "a disinterested expert experienced and qualified in mental health," to examine Roberson with regard to his ability to stand trial.   Dr. Fuller eventually conducted a psychiatric examination of Roberson and wrote a report, the contents of which were sealed.  However, based on our review of the record, it appears that Dr. Fuller proclaimed Roberson competent to stand trial.

The day of the trial, September 7, 2010, and prior to voir dire, a pretrial hearing was held, in which the following exchange occurred:

Q.      [The Court].  Okay.   The record will reflect the Defendant, Mr. Roberson, is present in the courtroom with counsel and Mr. Reis is present for the State and the jury panel has been excluded from the courtroom.   Do you have a matter to present?

A.      [Mr. Faden, Counsel for Roberson]. Yes.   We were here, the Court may recall, we were here two weeks ago.   I brought it to your attention that Mr. Roberson was not

4

communicating with me—or would not communicate with me and he was brought into the courtroom and you examined him and he would communicate with you, I think was the determination today.

Today Mr. Roberson is exhibiting the same behavior. He will not communicate with me, and I'm being told from the jail personnel that he's exhibiting some bizarre behavior at the jail.

So, I'm in a quandary as to how to proceed today. Whether or not Mr. Roberson is not acting appropriately on purpose or not, I'm not in a position to be able to make that determination. So, I'm going to defer to the Court for that determination.

Q.    [The Court.]   Mr. Reis, we're looking at the Court's file; and do you remember the day of the hearing we had? It wasn't that long ago?

A.    [Mr. Faden].   It was about two weeks ago from last Thursday, I think.

A.    [Mr. Reis].   Our notes show, your Honor, that we were here August 18th.

Q.    [The Court].   And then the Court's recollection at that time was that Mr. Roberson—it's accurate as to what you've reflected, that you had indicated that concern to the Court. Mr. Roberson was brought out and examined and he answered the Court's questions and, including the question of why he chose not to communicate with his attorney, and I'm going to paraphrase his answer, which was along the lines of "I don't care." And we can argue the strategic quality of that answer, but it was rational to the questions that the Court was asking at the time.

So, today his behavior is consistent with what we heard the other day in front of the Court. So, my position is going to be, Counsel, if you want to put on evidence that might indicate to the Court that he has somehow lost competency since August 18th, that we'll receive that evidence. Otherwise, he's been examined. I believe he's been examined for competency; determined competent; and the Court did

5

a further examination just a few days ago, which Mr. Roberson responded appropriately to the questions, meaning that he answered the questions, whether or not the answers were—as far as my understanding is, he is entitled not to communicate with his attorney if he chooses not to.

Roberson's counsel proceeded to put on evidence regarding Roberson's alleged mental incompetency. Damon Miskell, a Matagorda County deputy, testified that that morning, officers found Roberson naked, kneeling on his knees in his bed, looking straight up, and drooling profusely. He refused to speak with the officers, and the officers moved him to a padded cell. Deputy Miskell also testified that he had not seen Roberson speak to anyone in the last two weeks. However, on cross-examination, Deputy Miskell admitted that Roberson seemed fully aware of his surroundings and was paying attention to the testimony during the hearing, although he refused to speak. The trial court then attempted to ask Roberson questions:

Q. [The Court]. Mr. Roberson, you understand that you are—Mr. Roberson, you understand that you're charged with the offense of aggravated robbery?

A. [Roberson]. (No response).

Q. [The Court]. Do you understand that you're charged with the offense of aggravated robbery?

A. [Roberson]. (No response).

Q. [The Court]. Mr. Roberson, can you identify in the courtroom your attorney?

A. [Roberson]. (No response).

Q. [The Court]. Mr. Roberson, can you hear me?

A. [Roberson]. (No response).

Q. [The Court]. The record is going to reflect that Mr. Roberson is

6

> making eye contact with the Court when the Court speaks but, otherwise, has been nonresponsive to the Court's questions.

The trial court determined that Roberson was competent to stand trial, and a jury was then selected. Prior to opening arguments, though, counsel for Roberson again requested a hearing outside the presence of the jury. This time, Roberson's counsel told the trial court that Roberson refused to dress in the street clothes his attorney provided him for trial. This refusal, Roberson's counsel explained, meant that Roberson would begin the trial wearing his standard jail uniform.[1] In response, the prosecution called the trial court's bailiff Bill Orton. Bailiff Orton testified that he heard Roberson say that "he didn't care" about wearing jail clothing to his trial. The court then asked Roberson the following:

| Q. | [The Court]. | Before we go into the courtroom, Mr. Roberson, I need to ask you: Do you want to be dressed out in your street clothes? |
|---|---|---|
| A. | [Roberson]. | No. |
| Q. | [The Court]. | No, you don't? |
| A. | [Roberson]. | It don't matter. |
| A. | [Court Reporter]. | It don't matter. |
| Q. | [The Court]. | Okay. Do you understand you have a right to dress in your street clothes before the jury? |
| A. | [Roberson]. | No. |
| Q. | [The Court]. | Okay. You have a right, if you choose to do so, to be dressed in your street clothes. Okay. So, if you choose to be dressed in your street |

---

[1] *See Thompson v. State*, 514 S.W.2d 275, 277 (Tex. Crim. App. 1974) (holding that defendants should not appear for trial handcuffed or in jail clothing unless there are sufficient reasons to do so, as the appearance of such might prejudice the defendant's presumption of innocence).

|   |   |   |
|---|---|---|
| | | clothes, the Court is allowing you to do that. Do you understand? It's your choice, okay? |
| A. | [Roberson]. | Yeah. |
| Q. | [The Court]. | Okay. You do want to change into your street clothes? |
| A. | [Roberson]. | No. |

Trial began. From the record, it appears that Roberson did change into street clothes for the first day of trial. However, Roberson refused to change from his prison garb on the second day of trial. Outside the presence of the jury, Officer Wayne Dekle, a detention officer for the Matagorda County Sheriff's Office, testified that he and other officers tried to get Roberson to change clothing but that Roberson refused to communicate with them. In Officer Dekle's opinion, Roberson "was aware of what [they] were] talking about." Investigator Susan Maxwell testified next, stating that Roberson agreed to change his clothes in exchange for a donut. She also said that he stood up when she asked him to stand up, and that her impression was that "he underst[ood] what's going on." However, Roberson did not change. The trial judge noted, "I believe Mr. Roberson's been fully admonished by his attorneys and by the Court and has chosen to appear despite whatever consequences may fall regarding the perception of the jury about him by virtue of his appearance. . . . [T]he Court sees no option at this point but to proceed with the case."

The jury found Roberson guilty of aggravated robbery, sentenced him to ten years in prison, and ordered him to pay a $1,500 fine. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Roberson contends that the evidence adduced at trial was insufficient to support his conviction for aggravated robbery.

## A. Standard of Review

Our only sufficiency review should be under "a rigorous and proper application" of the *Jackson v. Virginia* standard of review. *Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Roberson: (1) in the course of committing theft; (2) with intent to

9

obtain and maintain control of property; (3) intentionally or knowingly; (4) caused bodily injury to another person; (5) who was 65 years of age or older. *See* Tex. Penal Code Ann. §§ 29.02, 29.03(a); *Robinson v. State*, 596 S.W.2d 130, 132 (Tex. Crim. App. 1980); *Santos v. State*, 116 S.W.3d 447, 457 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

## B.    Analysis

The evidence showed that, shortly after the incident, Mesey identified Roberson as the man wearing the same clothing as the attacker who snatched her purse and that police officers found Mesey's purse and personal belongings near the home where Roberson had hidden. In his written statement, Roberson admitted that he deliberately "watched for an old lady so [he] could take her purse" in the H.E.B. parking lot, and eventually followed through with his intentions when he pursued Mesey and forcefully took her purse. Mesey testified that she was sixty-seven years old at the time of her assault (she was sixty-nine years old at the time of trial). She also, in great detail, explained the nature of her injuries after her purse was snatched: she experienced a fractured cheekbone, a partially crushed left orbital socket, a broken left shoulder, and a broken left hip. Mesey explained to the jury that she walks with a limp to this day because her left leg is shorter than the other.

Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19; *see also* Tex. Penal Code Ann. §§ 29.02, 29.03(a). We thus conclude that the evidence was sufficient to support Roberson's conviction and overrule his first issue.

10

### III. SUA SPONTE MENTAL COMPETENCY EVALUATION

By his second issue, Roberson argues that the trial court violated the due process clause of the Fourteenth Amendment, the Fifth Amendment, and article 46B.004 of the Texas Code of Criminal Procedure when it failed, sua sponte, to order a mental competency evaluation on the day of Roberson's jury trial.

### A. Standard of Review and Applicable Law

A trial court's decision on whether to conduct a competency inquiry is reviewed under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd); *LaHood v. State*, 171 S.W.3d 613, 617–18 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). "A competency hearing is not required unless the evidence is sufficient to create a bona fide doubt in the mind of the judge whether the defendant meets the test of legal competence." *Moore*, 999 S.W.2d at 393. A person is incompetent to stand trial if he does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or (2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a).

If evidence is brought to the trial court raising a bona fide doubt as to the defendant's competency, the court must conduct an informal inquiry outside the presence of the jury to determine whether there is evidence to support a finding of incompetency to stand trial. *Id.* art. 46B.004. "In the inquiry, the court must determine

whether there is 'some evidence' to support a finding of incompetency, and, if the court so finds, it must then commence a hearing before a jury." *LaHood*, 171 S.W.3d at 618 (quoting *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003)). Evidence which can create a bona fide doubt may "come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other claim or credible source." *Id.* (citing *Brown v. State*, 129 S.W.3d 762, 765 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). Bona fide doubt can be created if the evidence shows "recent, severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *McDaniel*, 98 S.W.3d at 710 (quoting *Alcott v. State*, 51 S.W.3d 596, 602 (Tex. Crim. App. 2001)). "If evidence warrants a competency hearing, and the trial court denies such hearing, the defendant is deprived of his constitutional right to a fair trial." *LaHood*, 171 S.W.3d at 618.

**B. Analysis**

Here, the evidence was not sufficient to create a bona fide doubt regarding Roberson's mental competency on the day of trial. We note that the court previously granted a Motion for Psychiatric Examination of Defendant and that an independent, disinterested expert, Dr. Fuller, opined that Roberson was competent to stand trial. On the day of trial, there was conflicting testimony regarding Roberson's state of mind. Although Deputy Miskell testified that Roberson was found naked, kneeling on his knees in his bed, looking straight up, and drooling profusely, he also testified that Roberson appeared to be following the pretrial proceedings and was aware of his surroundings. When the trial court attempted to speak with Roberson, Roberson refused to answer; however, later that same day, when the trial court informed Roberson about his option to

change his clothing, Roberson admitted that "it didn't matter" to him. Bailiff Orton testified that he heard Roberson say that "he didn't care" about wearing jail clothing to his trial. On the second day of trial, Officer Dekle testified Roberson "was aware" about the impact of wearing prison garb to trial, and Investigator Maxwell testified that Roberson agreed to change his clothes in exchange for a donut. She also said that he stood up when asked, and that her impression was that "he underst[ood] what's going on." This testimony reflects that Roberson had a rational as well as factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a).

We conclude that the trial court did not abuse its discretion when it did not order a mental competency evaluation on the day of Roberson's jury trial. The evidence was not sufficient to raise a "bona fide" doubt regarding Roberson's competence—there was no proof of "severe mental illness, moderate retardation, or truly bizarre acts by the defendant." Instead, it appears that Roberson made deliberate choices concerning when he would communicate with others. His failure to cooperate in his defense seemed purposeful, and his failure to change out of his prisoner's uniform and into street clothes reflected his stated attitude on the record that he simply "didn't care." As the Texas Court of Criminal Appeals has noted, albeit under different circumstances, "if such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Moore*, 999 S.W.2d at 395 (finding that defendant's "unruly and disruptive courtroom demeanor" was "timely, topical, and logically related" to the trial court's proceedings). In light of the foregoing, we overrule Roberson's second issue.

13

### IV.    CONCLUSION

Having overruled both of Roberson's issues, we affirm the decision of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of August, 2011.