**Opinion filed May 16, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00148-CR

_____

## JOSEPH RICHARD GRONDAHL, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-21-0632-CR**

### M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Joseph Richard Grondahl, Jr., of the first-degree felony offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West Supp. 2023). The jury assessed Appellant's punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. In one issue, Appellant asserts that he received ineffective assistance of counsel for his counsel's failure to object to a State's

witness testifying in jail clothing and to the State's questions about why the witness was wearing jail clothing. We affirm.

*Background Facts*

Appellant visited Natalee Lassiter at her upstairs apartment on the night of December 12, 2020. While Appellant, Lassiter, and Christoper Penn were outside smoking, Austin Pasillas arrived unannounced to speak to Lassiter. Pasillas became increasingly aggressive as he begged Lassiter to "take him back," and at some point brandished a knife before walking back downstairs. When Pasillas got downstairs, Appellant ran after him, shoved him against a door, drew his own knife, and stabbed Pasillas three times in the chest area.

Felipe Limon Jr. and his son Jeremiah Limon were in their first-floor apartment when they heard loud arguing coming from upstairs. As they opened their front door, they saw the struggle that ensued after Appellant had chased Pasillas downstairs. Pasillas's hands were at his side, and he did not have any weapons when Appellant shoved and stabbed him. Felipe, Jeremiah, and Penn heard Pasillas say, "you stabbed me," before Pasillas collapsed.

At trial, Jeremiah took the stand dressed in a jail-issued "jumpsuit." The State began direct examination by addressing Jeremiah's apparel:

> [THE STATE]:    [Jeremiah], first off the bat, you're not being charged with a crime, are you?
>
> [WITNESS]:    No.
>
> [THE STATE]: You're in that jumpsuit because you were taken in on a material witness bond because you had run away from being a witness in this case; is that right?
>
> [WITNESS]:    Yes, that's correct.
>
> [THE STATE]:    Why did you run away?
>
> [WITNESS]:    I was kind of afraid.
>
> [THE STATE]:    What were you afraid of?

2

> [WITNESS]:    Retaliation against what could possibly happen because of this case.
>
> [THE STATE]:    Other than that, you've never been arrested at all, have you?
>
> [WITNESS]:    No. No, sir.
>
> [THE STATE]:    And again, you're not charged with a crime right now?
>
> [WITNESS]:    No.

Appellant did not object to Jeremiah's jail clothing, nor to the line of questioning thereon. Jeremiah then gave his account regarding what he witnessed, and told the jury that after Appellant stabbed Pasillas, he looked at Jeremiah as he fled and said, "he's lucky [I] didn't shoot the m----------r." Jeremiah called 9-1-1, turned Pasillas on his back, and applied pressure to his wounds. But Pasillas bled out in "maybe 20 seconds," and died before first responders arrived.

Appellant testified at trial that Pasillas arrived while he was outside Lassiter's apartment with her and Penn, and began "screaming . . . negative talk" from downstairs. When Pasillas came upstairs, he "start[ed] putting his hands around [Lassiter]," threatened to "kill every one," and eventually pulled out a knife. Appellant told the jury that he "was scared for [his] life," so he went downstairs first, and Pasillas followed him. Appellant's account portrayed Pasillas as the aggressor: Pasillas shoved him first, and Appellant thought Pasillas stabbed him, so he pulled out his own knife to use in self-defense. The jury rejected Appellant's self-defense claim, found him guilty of murder, and assessed his punishment at life imprisonment.

*Analysis*

Appellant contends in his sole issue that he received ineffective assistance of counsel for the failure to object to Jeremiah testifying in jail clothes, and the clarification therefor. Specifically, he argues that "the fact that Jeremiah Limon was

3

so afraid of testifying that he would run away and then be held in jail and effectively forced to testify because he was afraid of retaliation, would have no doubt caused Appellant unfair prejudice." Appellant also claims that it "misled the jury into thinking that Appellant was a violent killer."

*Standard of Review*

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that: (1) his trial counsel rendered deficient performance in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). "Failure to succeed on either prong is fatal to the ineffectiveness claim." *Lane*, 670 S.W.3d at 671.

"An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Id.* (citing *Strickland*, 466 U.S. at 687–88, 690). "There is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). Counsel's performance "is judged by the totality of the representation, not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.* (internal quotation marks omitted).

"Claims of ineffective assistance must be firmly rooted in the record." *Hart*, 667 S.W.3d at 782. "Under most circumstances, the record on direct appeal will not

be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). Counsel's actions are deficient only if the reviewing court finds that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

In assessing whether counsel's performance fell below an objective standard of reasonableness, we must look to the record for any strategic motive for counsel's actions. *See Strickland*, 466 U.S. at 687–88; *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013). On a silent record, a reviewing court may only find ineffective assistance of counsel if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined', and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.") (quoting 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c) (2d. ed 1999)). To meet his burden to prove the prejudice prong, Appellant must show that there is a reasonable probability that the result of his trial would have been different but for trial counsel's errors. *See Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022); *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694.

When alleging ineffective assistance of counsel for the failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection had trial counsel made one. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Munoz v. State*, No. 11-13-00139-CR, 2015 WL 4053483, at *5 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication). Appellant argues that trial counsel should have objected, under Rules 401, 402, and 403 of the Texas Rules of Evidence, to Jeremiah testifying in jail clothes and the State's direct-examination questions regarding Jeremiah's jail clothes.

*Discussion*

At the outset, we note that Appellant did not file a motion for a new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matters that Appellant contends were deficient. The Court of Criminal Appeals has stated that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Appellant has cited no authority, and our research has not revealed any, evaluating the potential prejudice to a defendant of a State's witness testifying in jail clothes. Rather, our sister courts have discussed *defense* witnesses testifying in jail clothing, generally finding that the defendant was not prejudiced thereby.[1]

---

[1] *See, e.g.*, *Cavitt v. State*, 507 S.W.3d 235, 246 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (any error in allowing a defense witness to appear in jail clothes because she ignored subpoenas was harmless—the trial court permitted the witness's handcuffs to be removed in front of the jury, clarified that she was not charged with a crime, and permitted the witness to explain the circumstances of her detention); *Gordon v. State*, 260 S.W.3d 205, 211 (Tex. App.—Texarkana 2008, pet. ref'd) (harmless error to require a defense witness to testify in jail clothing due solely to the sheriff department's policy, because "it was inevitable that the jury would find out [the witness] was a convicted felon and had been brought from prison to testify on [the defendant's] behalf"); *Gibson v. State*, 233 S.W.3d 447, 453–54 (Tex. App.—Waco 2007, no pet.) (finding no abuse of discretion in permitting a State's witness who testified favorably to the defense to appear in jail clothes because there was no prejudice to the defendant); *cf Davis v. State*, No. 06-09-00203-CR, 2010 WL 2854248, at *3–5 (Tex. App.—Texarkana July 22, 2010, pet. ref'd) (mem. op., not

We further observe that it is within the trial court's discretion to either require or permit that witnesses appear in jail clothing and restraints "if the circumstances so warrant." *Thompson v. State*, 514 S.W.2d 275, 277–78 (Tex. Crim. App. 1974); *Cavitt*, 507 S.W.3d at 246. It is true that we must be aware of factors that may undermine the fairness of the fact-finding process and "guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). "That said, a trial [court] has broad discretion to control the business of the court and in how he preserves proper order and decorum." *See Simpson v. State*, 447 S.W.3d 264, 266 (Tex. Crim. App. 2014) (Cochran, J., concurring) (mem. op.). With those principles in mind, we first determine whether the trial court would have abused its discretion in overruling an objection under Rules 401, 402, and 403 of the Texas Rules of Evidence to Jeremiah's jail clothes and the State's clarification therefor. *Martinez*, 330 S.W.3d at 901.

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 402). "Evidence is relevant if it tends to make a fact 'of consequence in determining the action' more or less probable than it would be otherwise." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting TEX. R. EVID. 401). Here, we conclude that the trial court would not have abused its discretion by overruling a relevancy objection to Jeremiah's jail clothes and accompanying testimony about why he was in jail clothes.

Credibility is a central, often dispositive, issue in cases that are "he said, she said" in which the jury must reach a unanimous verdict based solely upon two

designated for publication) (The defendant complained that the trial court permitted his incarcerated accomplice to testify in civilian clothing because it "improperly boost[ed] her credibility." The Sixth Court of Appeals found no error in the trial court's ruling, observing that allowing the witness to testify in civilian clothing "did not compromise [the appellant's] right to a presumption of innocence.").

diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. *Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009). A jury must assess the credibility of each witness, and any potential bias or motive may be exposed by either party. *See* TEX. R. EVID. 607; TEX. CODE CRIM. PROC. art. 36.13 (West 2007); *see also Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) ("The jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented."). Hence, a witness's fear of the defendant may be admissible as relevant to the witness's credibility.[2] In this regard, the State may have felt the need to explain the circumstances of Jeremiah's jail clothes at trial in the event he was a recalcitrant witness at trial. From a strategic standpoint, Appellant could have permissibly attacked Jeremiah's credibility by emphasizing his jail clothes to show his refusal to comply with the subpoena for him to testify.[3]

Additionally, one's actions after witnessing the offense may be relevant to give the jury context.[4] And the Rules of Evidence permit a lay witness to testify

---

[2]*See, e.g.*, *Dickson v. State*, No. 05-14-01061-CR, 2016 WL 772766, at *3, n.4 (Tex. App.—Dallas Feb. 29, 2016, no pet.) (mem. op., not designated for publication) (citing *People v. Sanchez*, 69 Cal. Rptr. 2d 16, 24 (Cal. Ct. App. 1997) ("Testimony a witness is fearful of retaliation . . . relates to that witness's credibility and is . . . admissible."); *State v. McArthur*, 730 N.W.2d 44, 52 (Minn. 2007) ("Evidence of witnesses' fears of testifying and of purported threats against witnesses both tend to be relevant to general witness credibility or to explain a witness's reluctance to testify or inconsistencies in a witness's story.")).

[3]*See* TEX. R. EVID. 607; *see also Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009) ("The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled . . . to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him."); *Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007) (explaining the five major forms of impeachment); *see United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.").

[4]*See, e.g.*, *Hurst v. State*, 406 S.W.3d 617, 624–25 (Tex. App.—Eastland 2013, no pet.) (evidence that the defendant owned weapons was relevant to support witnesses' explanations that they initially lied to police because they were scared); *Wilson v. State*, 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, no pet.) (holding that a child victim could testify about the defendant assaulting her mother to explain why she "did not make a prompt outcry").

about his feelings or opinions based on personal observations.[5] Here, after Jeremiah witnessed Appellant stab Pasillas right outside his apartment, Appellant locked eyes with Jeremiah and said, "he's lucky [I] didn't shoot the m----------r." Jeremiah called for help, and held a towel over Pasillas's wounds as he bled out. Jeremiah's fear of retaliation was thus based on his personal observations and experience and was relevant to the jury's credibility determinations. *See, e.g.*, *Ford v. State*, No. 05-04-00253-CR, 2005 WL 957917, at \*6–7 (Tex. App.—Dallas Apr. 27, 2005, no pet.) (not designated for publication) (no error in permitting witness to say she was scared while testifying). Therefore, the trial court would not have abused its discretion by overruling an objection to the admission of this evidence under Rules 401 and 402. *See McIntyre v. State*, No. 14-13-00407-CR, 2014 WL 6602420, at \*10 (Tex. App.—Houston [14th Dist.] Nov. 20, 2014, no pet.) (mem. op., not designated for publication) (testimony that is relevant to a witness's credibility is relevant to the jury's determination of the disputed facts of the case). Trial counsel's failure to object under Rules 401 and 402 did not constitute deficient performance.

We next turn to whether the trial court would have abused its discretion in overruling an objection under Rule 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hall v. State*, 663 S.W.3d 15, 34 (Tex. Crim. App. 2021); *Arevalo v. State*, 675 S.W.3d 833, 851 (Tex. App.—Eastland 2023, no pet.). However, it also provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

---

[5]*See* TEX. R. EVID. 602 ("A witness may testify to a matter only if . . . the witness has personal knowledge of the matter."); TEX. R. EVID. 701 (lay witness may give opinion testimony if "rationally based on the witness's perception"); *see also Gholson v. State*, 542 S.W.2d 395, 402–03 (Tex. Crim. App. 1976); *Lewis v. State*, 503 S.W.2d 806, 809–10 (Tex. Crim. App. 1974); *Matthews v. State*, No. 05-19-00847-CR, 2020 WL 7332676, at \*2–3 (Tex. App.—Dallas Dec. 14, 2020, pet. ref'd) (mem. op., not designated for publication) (finding no harm in admission of witness's testimony that she was angry upon learning of the child's death, based on her personal interaction with the deceased child).

TEX. R. EVID. 403. So even if a trial court determines that evidence is relevant and admissible for a non-conformity purpose, Rule 403 may still preclude its admission if the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022). When conducting a Rule 403 analysis, a trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hall*, 663 S.W.3d at 32 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)); *Roe v. State*, 660 S.W.3d 775, 784 (Tex. App.—Eastland 2023, pet. ref'd).

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. *Gigliobianco*, 210 S.W.3d at 641. "Probative value" refers "to how strongly an item of evidence 'serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence.'" *Roe*, 660 S.W.3d at 784–85 (quoting *Gigliobianco*, 210 S.W.3d at 641). The second *Gigliobianco* factor focuses on the State's need for the evidence. *Id.*

As set forth above, Jeremiah's testimony was relevant to the jury's credibility determination. But even if Jeremiah's jail clothes and explanation therefor had no "bear[ing] directly on the purely legal issues," the State's questions were relevant to

"fill in the background of the narrative." *See Mayes v. State*, 816 S.W.2d 79, 87 (Tex. Crim. App. 1991) ("Contextual 'background' evidence has been admitted not out of necessity but out of judicial grace. [C]onsiderable leeway is allowed even on direct examination for proof of facts that do not bear directly on the purely legal issues.") (internal quotation marks omitted). And the State's inquiry served to answer "the obvious question the jurors would have been asking themselves." [6] We thus find that the first two factors would have weighed in favor of admission. *See Contreras-Aguilar v. State*, No. 03-20-00112-CR, 2021 WL 2557954, at *3–6 (Tex. App.—Austin June 23, 2021, no pet.) (mem. op., not designated for publication).

The third, fourth, and fifth *Gigliobianco* factors focus on the tendency of the evidence to suggest a decision on an improper basis, the potential to confuse or distract the jury from the main issues, and the potential to mislead the jury. *Roe*, 660 S.W.3d at 785. "Unfair prejudice refers to the evidence's 'tendency to tempt the jury into finding [the defendant] guilt[y] on grounds apart from proof of the offense charged.'" *Perkins*, 664 S.W.3d at 216 (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). Indeed, all evidence that is presented against a defendant is designed to be prejudicial; however, Rule 403 is not concerned with prejudicial evidence, but rather with evidence that is *unfairly* prejudicial. TEX. R. EVID. 403; *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).

---

[6]*See, e.g.*, *Joseph v. State*, No. 04-01-00055-CR, 2001 WL 1479253, at *3 (Tex. App.—San Antonio Nov. 21, 2001, pet. ref'd) (mem. op., not designated for publication). In *Joseph*, the defendant complained on appeal that his trial counsel was ineffective for introducing evidence of prior bad acts of a defense witness. *Id.* The court observed:

> Although it is puzzling why defense counsel would impeach his own witness by asking these questions, both parties asserted in their briefs that [the witness] may have been wearing jail clothes at the time he testified. If that is the case, defense counsel's decision to explain the witness' uniform before asking him any substantive questions was a reasonable response to the obvious question the jurors would have been asking themselves.

*Id.* In any event, the court found that the defendant failed to show that, but for his attorney's questions, a reasonable probability existed that the outcome of the proceeding would have been different. *Id.*

Jeremiah's jail clothes and explanatory testimony had minimal potential for unfair prejudice. Appellant did not dispute that he intentionally stabbed Pasillas, nor that Jeremiah witnessed him do so. Rather, Appellant challenges Jeremiah's rendition of Appellant's reaction to the stabbing. As we have explained, Jeremiah, as a lay witness, legitimately relayed his personal observations and subsequent reactions. *See supra* notes 6, 7. Jeremiah's testimony and jail clothing thus did not suggest a decision on an irrational or improper basis. And although Jeremiah's fear of retaliation may have tended to make his and other witnesses' testimony that Appellant was the aggressor more plausible, it is well-settled that otherwise admissible substantive evidence should not be excluded for mere injury to an appellant's case. *See Pawlak*, 420 S.W.3d at 811.

The complained-of evidence also carried no risk of confusion or potential to mislead the jury. Jeremiah acknowledged that he "[ran] away from being a witness in this case" because he was "kind of afraid" of "[r]etaliation against what could possibly happen." Without clarification, the jury would have wondered why Jeremiah was in jail clothes. *See Joseph*, 2001 WL 1479253, at *3. Jeremiah's brief explanation for being in jail clothes was far less likely to suggest that Appellant "was a violent killer" than the other fact-specific testimony from Jeremiah, Felipe, Penn, and even Appellant.

As for the sixth factor—the time needed to present the proffered evidence and whether it is cumulative of other evidence—the challenged testimony consumed relatively little time. In the record, Jeremiah's statements regarding his appearance covered less than half a page of the State's roughly 485-page case-in-chief. As the challenged evidence consisted of only a minuscule portion of trial, it can hardly be deemed excessive. *See Rodriguez v. State*, 678 S.W.3d 375, 387 (Tex. App.—Dallas 2023, pet. ref'd). Considering the foregoing, we conclude that the trial court would

not have abused its discretion by overruling an objection by defense counsel under Rule 403.

Because Appellant has not demonstrated that the trial court would have abused its discretion in overruling the Rule 401, 402, or 403 objections had trial counsel made them, we cannot conclude that trial counsel's failure to object under these circumstances constituted deficient performance. Moreover, the record is devoid of trial counsel's motivations and strategies, and consequently fails to overcome the strong presumption that his conduct fell within the wide range of professional assistance. *Thompson*, 9 S.W.3d at 813. Simply put, on the undeveloped record before us, trial counsel's conduct was not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia*, 57 S.W.3d at 440). Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


May 16, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.